ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| EL PUEBLO DE PUERTO RICO

Recurrido

v.

WILLY PÉREZ VALENTÍN

Peticionario | TA2026CE00515 | *Certiorari*, procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez

Caso Núm.: ISCR202500211

Sobre: Art. 401 Ley Sustancias Controladas |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Romero García[1], el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece Willy Pérez Valentín ("señor Pérez Valentín" o "Peticionario") mediante *Certiorari* y nos solicita que revisemos una *Resolución* emitida el 27 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("TPI"). En virtud del aludido dictamen, el TPI denegó suprimir el *Consentimiento a un Registro* suscrito por la esposa del peticionario, a pesar de esta no estar disponible para autenticarlo, por virtud del privilegio conyugal.

Por los fundamentos que proceden, se *expide* el auto de *certiorari* solicitado y se *confirma* la determinación recurrida.

**I.**

Por hechos acontecidos el 14 de noviembre de 2024, el Ministerio Público radicó una acusación en contra del señor Pérez Rivera por violación al Artículo 201 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA sec. 2401.

Tras varias instancias procesales, el 6 de octubre de 2025, el peticionario presentó una *Solicitud de Supresión de Evidencia*. Arguyó que el testimonio del agente interventor, José Arroyo Orengo ("agente Arroyo Orengo") era uno estereotipado. Expuso, a su vez, que no tenía motivos fundados o una orden para

---

[1] Mediante la Orden Administrativa, OATA-2026-045, de 5 de mayo de 2026, se designó a la Hon. Giselle Romero García, en sustitución del Hon. Felipe Rivera Colón.

arrestar y ocupar la evidencia delictiva. Razonó que, como consecuencia, procedía la supresión de la evidencia incautada ilegalmente.

Posteriormente, el 19 de febrero de 2026, se celebró la Vista de Supresión de Evidencia. La prueba del Ministerio Público consistió en el testimonio del agente Arroyo Orengo, así como la presentación de la siguiente prueba documental, la cual no fue objetada por el peticionario: (1) unas fotografías: (2) el *Consentimiento a un Registro* (PPR-612.1), firmado por la esposa del acusado; (3) la prueba de campo; (4) las Advertencias Miranda; y (5) la Declaración de Persona Sospechosa suscrita por el agente interventor.

Atinente a la controversia ante nos, el agente Arroyo Orengo testificó que trabaja para la División de Drogas de Mayagüez.[2] Explicó que, el día 14 de noviembre de 2024, al tomar servicio, discutieron un Plan de Trabajo, el cual consistía en la vigilancia de un conocido punto de drogas ubicado en el Residencial Yagüez ("Residencial").[3] Narró que, alrededor de las 9:10 a.m. y 9:15 a.m., al llegar al Residencial, dejó el vehículo en los predios y caminó hasta llegar a los Edificios 10 y 11, frente a la cancha de baloncesto, donde se ubicó para llevar a cabo la vigilancia.[4]

Relató que, posteriormente, como a unos 20 pies de distancia, observó a un individuo que se paró en la parte posterior del Edificio 10.[5] Manifestó que, como acto seguido, divisó al sujeto colocarse frente a una ventana color blanca, introducir su mano derecha en el bolsillo frontal del lado derecho de su pantalón y sacar papel moneda.[6] Expresó que, entonces, miró al individuo pasar el dinero a través de las lamas de la ventana.[7] Testificó que, mientras se encontraba caminando hacia el individuo, como a una distancia entre 10 a 15 pies, observó una mano salir de la ventana y entregarle a la persona una bolsita transparente de tonalidad azul la cual vio que contenía un polvo blanco.[8] Aclaró que, por su experiencia, identificó la sustancia como cocaína en su modalidad de *crack.*[9] Narró que, consecuentemente,

---

[2] Véase, Regrabación de la Vista de Supresión de Evidencia, 2:05.
[3] Véase, Regrabación de la Vista de Supresión de Evidencia, 2:10-3:25.
[4] Véase, Pegrabación de la Vista de Supresión de Evidencia, 3:30-4:25.
[5] Véase, Regrabación de la Vista de Supresión de Evidencia,  4:30-5:10.
[6] Véase, Regrabación de la Vista de Supresión de Evidencia, 5:10-5:30.
[7] Véase, Regrabación de la Vista de Supresión de Evidencia, 5:30-5:40.
[8] Véase, Regrabación de la Vista de Supresión de Evidencia, 5:40-6:00
[9] Véase, Regrabación de la Vista de Supresión de Evidencia, 6:00.

se identificó como policía y le notificó al individuo que estaba bajo arresto, por violación a la Ley de Sustancias Controladas, le verbalizó las advertencias de Ley y procedió a ocupar la sustancia.[10]

Indicó que, al poner bajo arresto al sujeto, observó entre las lamas de la ventana a un hombre a quien describió tener barba y vestir una gorra blanca y una camisa *t-shirt* negra.[11] Explicó que, al ver al individuo dentro del apartamento, se identificó y le notificó que también se encontraba bajo arresto, por violación a la Ley de Sustancias Controladas.[12] Testificó que, dejó en custodia al primer individuo con un agente compañero y se dirigió hacia el apartamento.[13] Narró que, al llegar a la residencia, la señora Migdalia, quien se identificó a sí misma como la titular del apartamento, le autorizó entrar al mismo.[14]

Posterior a ello, el Ministerio Público le enseñó al agente el documento intitulado *Consentimiento a un Registro* (PPR-612.1), marcado como Exhibit 3.[15] Luego de examinarlo, el agente Arroyo Orengo testificó que lo reconocía, ya que fue el documento que le entregó a la señora Migdalia y mediante el cual esta última consintió al registro del apartamento.[16] Expuso, además, que, en cuanto al contenido, reconocía su nombre y su firma, así como la firma de la señora Migdalia.[17] Relató que, cuando completaron el documento y cuando la señora Migdalia prestó su firma, ambos se encontraban en el apartamento.[18] Afirmó que no tenía dudas en cuanto a que el documento presentado en sala era el mismo que suscribieron ese día.[19]

Testificó que, luego de obtener el consentimiento, la puerta del apartamento se encontraba abierta y logró observar, encima de un carro de compras, una bolsa transparente la cual en su interior contenía bolsas en tonalidad azul con cocaína en su modalidad de *crack* y bolsas amarillas con una pastilla la cual en su centro tenía la letra "g".[20] Al entrar, ocupó la bolsa transparente y el dinero que estaba en

---

[10] Véase, Regrabación de la Vista de Supresión de Evidencia, 6:05-6:20.
[11] Véase, Regrabación de la Vista de Supresión de Evidencia, 7:00-7:10.
[12] Véase, Regrabación de la Vista de Supresión de Evidencia, 7:20-7:28.
[13] Véase, Regrabación de la Vista de Supresión de Evidencia, 7:30-7:50.
[14] Véase, Regrabación de la Vista de Supresión de Evidencia, 24:50-25:55.
[15] Véase, Regrabación de la Vista de Supresión de Evidencia, 28:45-29:30.
[16] Véase, Regrabación de la Vista de Supresión de Evidencia, 29:30-29:50.
[17] Véase, Regrabación de la Vista de Supresión de Evidencia, 29:50-30:00.
[18] Véase, Regrabación de la Vista de Supresión de Evidencia, 30:00-30:15.
[19] Véase, Regrabación de la Vista de Supresión de Evidencia, 30:15-30:20.
[20] Véase, Regrabación de la Vista de Supresión de Evidencia, 34:35-35:00 y 36:00-36:20.

el carro de compras, el cual se encontraba en la sala del apartamento.[21] Aseveró que solo registró la sala de la residencia, es decir, no entró a otros cuartos.[22]

Por último, en lo aquí pertinente, aclaró que, cuando la señora Migdalia le autorizó entrar a la residencia, esta le indicó que el portón no abría y que, como corolario, le autorizó a forzarlo para lograr ingresar.[23] Expuso, además, que cuando la señora Migdalia prestó su consentimiento al registro, se encontraban presentes ella y el sospechoso.[24]

Aquilatada la prueba documental y testifical, el 26 de marzo de 2026, el TPI emitió una *Resolución* en virtud de la cual denegó la supresión solicitada. El foro de instancia realizó las siguientes determinaciones de hechos:

1. El 14 de noviembre de 2024, el agente Arroyo, adscrito a la División de Drogas del Área de Mayagüez, participaba de un plan de un plan de trabajo dirigido a realizar labores de vigilancia y corroboración en el Residencial Yagüez, lugar conocido por las autoridades como un punto de alta incidencia en la venta de sustancias controladas. El agente se encontraba vestido de civil y bajo la supervisión del agente Chaparro.

2. Ese día, aproximadamente entre las 9:10 a.m. y 9:15 a.m., el agente se desplazó a pie entre los edificios 10 y 11, cercano a la cancha del residencial, mientras otros dos agentes permanecían en un vehículo oficial.

3. Desde dicha posición, el agente observó a un individuo aproximarse a la parte posterior del edificio 10, detenerse frente a una ventana de lamas color blanco e introducir su mano en el bolsillo frontal derecho, de donde extrajo dinero en efectivo.

4. El agente Arroyo observó que dicho individuo entregó el dinero a través de las lamas de la ventana. Acto seguido, desde el interior del apartamento salió una mano que entregó al individuo una bolsita transparente de tonalidad azul.

5. Según el testimonio del agente, al aproximarse a una distancia aproximada de 10 a 15 pies, pudo observar que la bolsita contenía una sustancia blanca que, conforme a su experiencia y adiestramiento en la investigación de delitos de sustancias controladas, identificó como cocaína en modalidad de crack.

6. Ante dicha observación, el agente procedió a intervenir y arrestar al comprador, a quien le ocupó la bolsita antes descrita y le administró las advertencias de ley correspondientes. El agente Arroyo testificó que, en ese momento, se encontraba próximo a la ventana desde donde se realizó la transacción.

7. Posteriormente, al mirar a través de las lamas de la ventana, el agente observó dentro del apartamento a un individuo de tez blanca, barba y

---

[21] Véase, Regrabación de la Vista de Supresión de Evidencia, 35:15-35:25.
[22] Véase, Regrabación de la Vista de Supresión de Evidencia, 35:25-35:40.
[23] Véase, Regrabación de la Vista de Supresión de Evidencia, 1:40:45-1:40:55.
[24] Véase, Regrabación de la Vista de Supresión de Evidencia, 1:42:35-1:42:40.

camiseta negra, a quien identificó posteriormente en sala como el acusado Pérez Valentín. El agente procedió a indicarle que se encontraba bajo arresto por violación a la Ley de Sustancias Controladas.

8. Luego de dicha intervención, el agente se dirigió hacia la parte frontal del apartamento número 101, donde una dama identificada como Migdalia, quien manifestó ser la titular del apartamento, autorizó el acceso al lugar y posteriormente firmó un consentimiento de registro. El agente accedió al balcón del apartamento y procedió a efectuar el arresto del acusado.

9. Una vez dentro de la residencia, el agente observó en la sala del apartamento, específicamente sobre un carro de compras, una bolsa transparente que contenía varias bolsitas y dinero en efectivo, todo ello en plena vista. El agente declaró que no registró otras áreas de la residencia tales como habitaciones o baños, limitándose a ocupar lo que se encontraba visible en la sala.

10. En dicho lugar el agente ocupó: 23 bolsitas de tonalidad azul que contenían sustancia identificada como cocaína en modalidad de crack; cinco bolsitas amarillas que contenían pastillas; y $909.00 en efectivo en diferentes denominaciones.

11. El agente Arroyo tomó fotografías de la evidencia ocupada, incluyendo la bolsita ocupada al comprador y las sustancias encontradas en el interior del apartamento.

12. La evidencia ocupada fue posteriormente entregada al agente Wilfred Santiago, quien realizó una prueba de campo, arrojando resultado positivo a cocaína en modalidad de crack.

13. El agente también declaró que al acusado se le administraron las advertencias de ley por escrito, las cuales éste leyó y firmó. Posteriormente se completó una Declaración de Sospechoso, firmada por el acusado, en la cual éste expresó que la sustancia ocupada y el dinero le pertenecían y que ese día había realizado una venta a través de la-ventana del apartamento.

14. Durante el contrainterrogatorio, el agente reconoció que el plan de trabajo respondía a confidencias relacionadas con el edificio en cuestión, mas no con una persona específica. Asimismo, reiteró que observó directamente la transacción de dinero por la bolsita azul y que dicha observación motivó su intervención con el comprador.[25]

En base a ello, concluyó que la intervención realizada estuvo justificada ya que, de las circunstancias observadas directamente por el agente, surgían motivos fundados para creer que se había cometido un delito. Por tanto, dispuso que el arresto realizado sin una orden fue conforme a derecho.

Sobre el registro del apartamento, destacó que la esposa del acusado, quien se identificó como titular, válidamente consintió de manera expresa y, posteriormente, firmó el formulario correspondiente al *Consentimiento a un Registro*.

---

[25] Apéndice del recurso, Entrada Núm. 2, págs. 2-3.

Así dispuesto, razonó que el registro no violó las protecciones constitucionales contra registros irrazonables, por lo que la evidencia ocupada resultaba admisible.

Inconforme, el 27 de abril de 2026, el señor Pérez Rivera acudió ante nos mediante *Certiorari* en el cual le imputó al TPI la comisión de los siguientes errores:

**Erró manifiestamente el Honorable Tribunal de Primera Instancia, al admitir erróneamente al admitir en evidencia el documento de Consentimiento a Registro (PPR-612.1) a pesar de las objeciones oportunas de la defensa de faltas de autenticidad, prueba de referencia y violación al derecho a confrontación.**

**Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la solicitud de supresión de evidencia tomando en consideración prueba inadmisible en evidencia.**

El 28 de abril de 2026, este Tribunal emitió una *Resolución* en virtud de la cual le ordenó al TPI tramitar y presentar ante nos la regrabación de la vista de supresión de evidencia. A su vez, le concedimos a la parte recurrida un término para presentar su alegato en oposición al recurso. Según solicitado, el 30 de abril de 2026, el TPI remitió la regrabación de los procedimientos. Consecuentemente, el 11 de mayo de 2026, el Ministerio Público presentó su *Escrito en Cumplimiento de Orden.* Perfeccionado el recurso y contando con el beneficio de la regrabación de los procedimientos, así como la comparecencia de las partes, nos encontramos en posición de resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

El derecho a la intimidad está consagrado en la Constitución del Estado Libre Asociado de Puerto Rico. En lo aquí pertinente, el Artículo II, Sección 10 de la Constitución, Art. II, Sec. 10, Const. ELA [Const. PR], LPRA, Tomo 1, dispone lo siguiente:

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

[…]

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar o registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

Tal salvaguarda constitucional tiene como fin: (1) disuadir a los funcionarios del orden público para que no violen la Constitución, (2) proteger la integridad de los tribunales al no permitir que en los procesos judiciales se utilice evidencia obtenida ilegalmente, y (3) evitar que el Estado se beneficie de sus propios actos ilegales. *Pueblo v. Rivera Surita,* 202 DPR 800 (2019). Dicho mandato protege la intimidad y dignidad de los seres humanos, ampara sus documentos y demás pertenencias e interpone la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a toda intrusión gubernamental. *Pueblo v. Rolón Rodríguez,* 193 DPR 166, 175 (2015); *Pueblo v. Ferreira Morales,* 147 DPR 238, 249 (1998).

Ahora bien, la Regla 231 de Procedimiento Criminal, 34 LPRA Ap. II, R. 231, establece los requisitos de forma y contenido con los que debe cumplir una orden de registro y allanamiento. Atinente a la controversia ante nos, la aludida regla dispone lo siguiente:

No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. […] *Íd.*

No obstante, el Tribunal Supremo ha reconocido ciertas circunstancias bajo las cuales no será necesario una orden judicial, a saber: (1) un registro incidental a un arresto legal; (2) **un registro consentido voluntariamente de forma expresa o implícita**; (3) un registro en situación de emergencia; (4) una evidencia ocupada en el transcurso de una persecución; (5) una evidencia a plena vista; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato; (7) una evidencia arrojada o abandonada; (8) un registro o allanamiento

de una estructura abandonada; (9) una evidencia obtenida durante un registro administrativo; (10) un registro tipo inventario; o (11) una evidencia obtenida en un lugar público como resultado de la utilización de canes para olfatear. *Pueblo v. Báez López,* 189 DPR 918, 930-932 (2013).

En cuanto registro consentido, se ha establecido que la renuncia a la protección constitucional contra registros y allanamientos irrazonables puede ser expresa o implícita, siempre que sea voluntaria. *Pueblo v. Miranda Alvarado,* 143 DPR 356, 364 (1997); *Pueblo v. Santiago Alicea I,* supra, pág. 236; *Pueblo en interés menor N.O.R.,* 136 DPR 949, 965 (1994). Asimismo, la excepción "se configura en virtud de la facultad que posee el titular de la protección constitucional para renunciarla". *Pueblo v. Acevedo Escobar,* 112 DPR 770, 776-777 (1982). La validez del consentimiento prestado para realizar un registro "es una cuestión de hecho que se determina haciendo un examen cuidadoso de la totalidad de las circunstancias que rodean el caso". *Pueblo v. Miranda Alvarado,* 143 DPR 356, 364 (1997).

Por otra parte, la Regla 234 de Procedimiento Criminal, 32 LPRA Ap. II, R. 234, provee el mecanismo para suprimir la evidencia obtenida mediante actuaciones irrazonables del Estado. El estatuto dispone que toda persona perjudicada por un allanamiento o registro ilegal podrá solicitar la supresión de la evidencia obtenida por cualquiera de los siguientes fundamentos:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente. *Íd.*

Una moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal, *supra*, no debe meramente aludir al inciso aplicable, sino deberá expresar con especificidad y precisión los hechos en los que se basa. *Pueblo v. Rolón Rodríguez, supra*, pág. 183. En otras palabras, el promovente de una solicitud de supresión de evidencia deberá exponer los hechos precisos y razones específicas que sostengan el fundamento en que basa su reclamo. *Pueblo v. Blase Vázquez*, 148 DPR 618, 628 (1999). En lo aquí concerniente, la precitada regla establece lo siguiente:

> El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud y celebrará una vista evidenciaria ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada mediando una orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que haga necesario la celebración de la vista; en ausencia de tal demostración, el tribunal podrá adjudicar la moción sin vista previa utilizando como base los escritos presentados por las partes. *Íd.*

En cuanto a la revisión de la determinación de causa probable para expedir la orden de registro y allanamiento, el foro revisor no tiene que hacer una determinación *de novo* de causa probable. Por el contrario, **su análisis se limita a estimar "si la evidencia considerada en su totalidad proveía una base sustancial para la determinación de causa probable por el magistrado"**. (Énfasis suplido). Ernesto Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Editorial Forum, 1995, Vol. I, pág. 246, citando a *Massachussetts v. Upton*, 466 U.S. 727, 728 (1984).

**-C-**

El testimonio estereotipado es aquel que se limita a establecer "los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos." *Pueblo v. Acevedo Estrada*, 150 DPRA 84, 93 (2000), citando a *Pueblo v. Rivera Rodríguez*, 123 DPR 443, 480 (1989). El uso de declaraciones estereotipadas, por cualquier tipo de testigo, debe ser objeto de escrutinio riguroso para evitar que declaraciones falsas o inexactas vulneren derechos de ciudadanos inocentes. *Pueblo v. Camilo Meléndez*, 148 DPR 539, 558 (1999), citando a *Pueblo v. González del Valle*, 102 DPR 374, 376 (1974).

Los criterios para evaluar la credibilidad de un testimonio estereotipado son los siguientes:

1. Debe ser escudriñado con especial rigor.

2. Tanto los casos de "la evidencia abandonada" o "lanzada al suelo" como los casos del "acto ilegal a plena vista" deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado.

3. Cuando el testimonio es inherentemente irreal o improbable debe rechazarse.

4. El testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles.

5. La presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones.

6. El peso de la prueba de librar el testimonio estereotipado de sospecha recae en el Ministerio Público. *Pueblo v. Camilo Meléndez, supra*, pág. 559, citando a *Pueblo v. González del Valle, supra*, págs. 374-375.

Asimismo, "[u]n testimonio honesto no puede calificarse de estereotipado por el simple hecho de que exponga unas realidades fácticas que puedan formar parte del comportamiento usual y de las reacciones de algunas personas al confrontarse con agentes del orden público". *Pueblo v. Espinet Pagán*, 112 DPR 531, 536 (1982).

**-D-**

La Regla 901 de Evidencia, 32 LPRA Ap. VI, R. 901, establece que el requisito de autenticación o identificación de la evidencia será un requisito previo a su admisibilidad. Tal requisito "se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". *Íd.* Autenticar una pieza de evidencia implica demostrar que la misma es lo que la parte propone que es. *Rosado Reyes v. Global Healthcare*, *supra*, 205 DPR 796, 812 (2020), citando a E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 345.

En cuanto a los métodos para autenticar, la Regla 901 de Evidencia, *supra*, contiene una lista, no taxativa, "por lo que la autenticación no tiene que realizarse mediante un método específico". *Rosado Reyes v. Global Healthcare, supra*, pág. 813. Atinente a la controversia ante nos, la aludida regla establece lo siguiente:

(B) De conformidad con los requisitos del inciso (A) de esta Regla y sin que se interprete como una limitación, son ejemplos de autenticación o identificación los siguientes:

(1) ***Testimonio por testigo con conocimiento***
Testimonio de que una cosa es lo que se alega. (Énfasis suplido). *Íd.*

A esos efectos, se incluye como un testigo con conocimiento "a **la persona que estaba presente cuando se escribió o firmó el documento**", entre otros. (Énfasis suplido). E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas, op. sit.,* pág. 348.

Finalmente, el Tribunal Supremo ha advertido que, **"[s]i el juzgador estima que se presentó prueba suficiente para autenticar el objeto y decide admitir la evidencia, tal determinación no deberá ser alterada en apelación a no ser por un claro abuso de discreción"**. (Énfasis suplido). *Rosado Reyes v. Global Healthcare, supra,* pág. 812, citando a *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299, 350 (1991).

**-E-**

La prueba de referencia es aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia **para probar la verdad de lo aseverado**. Regla 801 (c) de Evidencia, 32 LPRA Ap. VI, R. 801 (c); *Toledo Maldonado v. Cartagena Ortiz,* 132 DPR 249, 257 (1992). Como norma general, la prueba de referencia no será admisible en evidencia, salvo que de otra manera se disponga por ley. Regla 804 de Evidencia, 32 LPRA Ap. VI. R. 804. Esta regla de exclusión está esencialmente fundada en el hecho de que la misma no ofrece garantías circunstanciales de confiabilidad y exactitud. *P.N.P. v. Rodríguez Estrada,* 123 DPR 1, 34 (1988).

En lo aquí pertinente, la Regla 806 de Evidencia, 32 LPRA Ap. VI, R. 806, regula lo concerniente la admisibilidad de la evidencia cuando la persona testigo no está disponible para testificar. Entre otras circunstancias, un testigo no se encuentra disponible para testificar cuando la persona "está exenta de testificar por una determinación del Tribunal por razón de un privilegio reconocido en estas Reglas en relación con el asunto u objeto de su declaración". Regla 806 (A)(1) de Evidencia, *supra.* Ante esta situación, y en lo aquí pertinente, será admisible como excepción a la regla general de exclusión de prueba de referencia lo siguiente:

(3) *Declaraciones contra interés*

Una declaración que al momento de ser hecha era tan contraria al interés pecuniario o propietario de la persona declarante o le sometía a riesgo de responsabilidad civil o criminal, o tendía de tal modo a desvirtuar una reclamación suya contra otra persona, o creaba tal riesgo de convertirla en objeto de odio, ridículo o desgracia social en la comunidad, que una persona razonable en su situación no hubiera hecho la declaración a menos que la creyera cierta. *Íd.*

Por otra parte, cuando se intenta usar prueba de referencia en contra de un acusado, se activa la protección constitucional del derecho a la confrontación consagrado en la Sección 11 de la Constitución del Estado Libre Asociado de Puerto Rico. Const. PR, Art. II, Sec. 11, 1 LPRA. De manera similar, dicha protección constitucional implica que cierta prueba de referencia, si es testimonial, será excluida, a pesar de proceder bajo algunas de las excepciones a la regla de exclusión. *Pueblo v. Guerrido López*, 179 DPR 950, 967 (2010).

### III.

En síntesis, el peticionario sostiene que el *Consentimiento a un Registro* (PPR-612.1) suscrito por la esposa del acusado, Migdalia Lugo Matías, era inadmisible en evidencia. Arguye que el documento constituye prueba de referencia, ya que la señora Migdalia no estaba disponible para testificar, por razón del privilegio conyugal reconocido. Manifiesta, a su vez, que el *Consentimiento a un Registro* no fue autenticado, debido a que la persona quien lo firmó no reconoció su firma o testificó sobre las circunstancias mediante las cuales se obtuvo el consentimiento. Además, expone que, admitir el documento, sin permitirle confrontar a la firmante, viola el derecho del acusado a confrontar testigos. Así, también, alega que la admisibilidad del documento se fundamentó en el testimonio presuntamente estereotipado del agente.

Por otra parte, el Ministerio Público arguye que el planteamiento sobre la presunta violación al derecho a la confrontación resulta improcedente, ya que el mismo no opera en una vista de supresión de evidencia. Expone, además, que, por ser una vista de carácter interlocutorio, las Reglas de Evidencia no son obligatorias, salvo aquellas disposiciones relacionadas a los privilegios y el conocimiento judicial. A pesar de lo anterior, asevera que el *Consentimiento a un Registro* no constituye una declaración de carácter testimonial, razón por la cual tampoco aplicaría el derecho a la confrontación. Además, manifiesta que el documento fue debidamente

autenticado por el agente Arroyo Orengo. A su vez, indica que no constituye prueba de referencia inadmisible, debido a que recae bajo la excepción relacionada a las declaraciones contra interés prestadas por un declarante no disponible como testigo.

Por este haber sido el proceder de las partes, los errores serán discutidos de manera conjunta. La controversia medular del caso gira en torno a determinar si el *Consentimiento a un Registro* constituye prueba de referencia y, en la alternativa, si fue debidamente autenticado.

Tras un examen sosegado del testimonio ofrecido por el agente, constatamos que el agente Arroyo Orengo testificó que, luego de observar lo que parecía ser una venta de sustancias controladas, se dirigió hacia la residencia del acusado. Al llegar al apartamento, se encontró con la señora Migdalia, quien se identificó como la titular de la propiedad y, a su vez, le autorizó entrar y registrar el lugar. Posterior al consentimiento verbal prestado, la señora Migdalia firmó, en presencia del agente y del acusado, el documento intitulado *Consentimiento a un Registro*. El agente Arroyo Orengo testificó a los efectos de identificar que las firmas contenidas en el documento correspondían a la suya y a la de señora Migdalia. Finalmente, afirmó que el documento presentado en evidencia fue el mismo que suscribieron el día de los hechos.

La Regla 901 de Evidencia, *supra*, requiere que, previo a su admisibilidad, la evidencia debe ser autenticada. Como método de autenticación, la normativa expresamente reconoce el testimonio de un testigo con conocimiento de que la cosa es lo que se alega. Según el profesor Chiesa Aponte, entre los testigos con conocimiento figura la persona que estaba presente cuando se firmó o suscribió el documento que se pretende autenticar. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas, op. sit.*, pág. 348. En otras palabras, contrario a lo sostenido por el peticionario, el testimonio de la persona que prestó su firma no es el único método para autenticar un documento. Ello, debido a que entre los métodos de autenticación reconocidos figura el testimonio de una persona que haya presenciado el acto. Ante ello, somos del criterio que de lo declarado por el agente Arroyo Orengo logró autenticar el documento en controversia.

De manera similar, el argumento relacionado a que el testimonio del agente fue uno estereotipado nos parece improcedente. Ello, ya que el agente Arroyo Orengo ofreció una declaración detallada sobre la manera en la que fue obtenido el consentimiento al registro. Más aun, el testimonio fue corroborado mediante prueba documental, a saber, el Consentimiento de Registro suscrito por la titular del apartamento.

Por otro lado, como norma general, la prueba de referencia no es admisible, debido a que el declarante no se encuentra disponible para testificar. Ciertamente, la señora Migdalia es una testigo no disponible, como consecuencia del privilegio conyugal reconocido por el foro de instancia. No obstante, conforme surge del testimonio, el agente Arroyo Orengo declaró sobre hechos que presenció personalmente. Ello, ya que se limitó a declarar que la titular del apartamento autorizó verbalmente el registro y que, posterior a ello, ratificó por escrito el consentimiento prestado mediante la firma del Consentimiento de Registro. En ese sentido, el testimonio no fue utilizado para aseverar si fue verdad o no que la señora Migdalia consintió al registro, sino para autenticar el documento. Por tanto, somos del criterio que el testimonio ofrecido por el agente Arroyo Orengo no constituyó prueba de referencia. Debido a que lo declarado por el agente no era prueba de referencia, el derecho de confrontación del acusado no fue violentado. Destacamos, además, que el señor Pérez Valentín tuvo plena oportunidad de impugnar el testimonio del agente Arroyo Orengo durante la vista de supresión.

**IV.**

Por los fundamentos que anteceden, se *expide* el auto de *certiorari* solicitado y se *confirma* la determinación recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones